**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

MIAMI DIVISION

| | |
|---|---|
| UNIR, LLC, a Florida limited liability company, and MARCONI INTERNATIONAL UNIVERSITY, INC., a Florida corporation,<br><br>       Plaintiffs,<br>v.<br><br>LAURA RICCI, a foreign national, MIA GLOBAL BUSINESS SCHOOL, S.L. d/b/a MIA DIGITAL UNIVERSITY, a foreign entity, and RENATO BEVILACQUA, a foreign national,<br><br>       Defendants. | Case No.:<br><br><u>JURY TRIAL DEMANDED</u> |

## COMPLAINT

Plaintiffs, UNIR, LLC and Marconi International University, Inc. (collectively "Plaintiffs") sue Defendants, Laura Ricci, MIA Global Business School, S.L. d/b/a MIA Digital University, and Renato Bevilacqua (collectively "Defendants"), and allege as follows:

### INTRODUCTION

1.      Plaintiff UNIR, LLC ("UNIR") is part of a well-respected private online university system based in Spain. In an effort to expand the university system, UNIR purchased Marconi International University, Inc. ("Marconi"), a Miami-based private online university, from its sole owner, Defendant Lauri Ricci ("Ricci"). Through a series of warranties and representations, Ricci assured UNIR that Marconi was in compliance with all accreditation and regulatory requirements. All of that, it turned out, was grossly false.

2.      To make matters worse, after UNIR took over, Ricci chose to violate her continuing fiduciary duties to Marconi when she and Defendant Renato Bevilacqua owned, operated, or at the

very least worked for, Defendant MIA Global Business School, S.L., which publicly holds itself out as MIA Digital University ("MIA"), and is a competing online university. Defendants recruited prospective students to MIA by falsely representing MIA as associated with Marconi, even going so far as to use Marconi's letterhead and trademark, as well as providing Certificates of Completion that included Marconi's trademark.

3. UNIR and Marconi file this action against Ricci, MIA, and Bevilacqua to recover damages, as well as put a stop to Defendants' willful and wonton unfair competition and deceptive trade practices.

**THE PARTIES**

4. Plaintiff UNIR LLC ("UNIR") is, and at all times relevant hereto was, a limited liability company organized and existing under the laws of the State of Florida. Its sole member is Proeduca Corporation, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

5. Plaintiff Marconi International University, Inc. ("Marconi") is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of Florida, with its principal place of business is in Miami, Florida.

6. Defendant Laura Ricci ("Ricci") is, and at all times relevant hereto was, an individual domiciled in the country of Italy.

7. Defendant MIA Global Business School, S.L. d/b/a MIA Digital University ("MIA") is, and at all times relevant hereto was, a Sociedad Limitada organized and existing under the laws of the country of Spain.

8. Defendant Renato Bevilacqua ("Bevilacqua") is, and at all times relevant hereto was, an individual domiciled in the country of Spain.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the claims for relief in this complaint pursuant to 28 U.S.C. § 1332(a)(2) because it is an action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a state and citizens of a foreign state.

10. This Court has personal jurisdiction over Defendant Ricci pursuant to section 48.193(1)(a), Florida Statutes, as she

    a. Committed a tortious act within this state,
    b. Breached a contract in this state by failing to perform acts required by the contract to be performed in this state, and
    c. Entered into a contract (the Stock Purchase Agreement between UNIR and Ricci) by which she consented to jurisdiction in this state and in this District.

11. This Court has personal jurisdiction over Defendant MIA pursuant to section 48.193(1)(a), Florida Statutes, as it

    a. Committed a tortious act within this state, and
    b. Caused injury to persons or property within this state arising out of an act or omission by MIA outside this state, when, at the time of the injury, MIA was engaged in solicitation or service activities within this state.

12. This Court has personal jurisdiction over Defendant Bevilacqua pursuant to section 48.193(1)(a), Florida Statutes, as he

    a. Committed a tortious act within this state,
    b. Breached a contract in this state by failing to perform acts required by the contract to be performed in this state, and

c. Operated, conducted, engaged in, or carried on a business or business venture in the State of Florida, or had an office or agency in the State of Florida.

13. Based on the foregoing conduct, the exercise of personal jurisdiction over the Defendants satisfies traditional notions of fair play and substantial justice under the Fourteenth Amendment of the United States Constitution.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this District. Moreover, Defendant Ricci consented to venue in this District for any proceeding seeking to enforce a provision of the Stock Purchase Agreement between UNIR and Ricci, as well as any proceeding based on any right arising out of said Stock Purchase Agreement.

## GENERAL ALLEGATIONS

**UNIR and Ricci Enter into a Stock Purchase Agreement for Marconi Shares**

15. On or about March 21, 2019 ("the Closing Date"), Plaintiff UNIR and Defendant Ricci entered into a Stock Purchase Agreement ("SPA") whereby UNIR exercised its option to purchase from Ricci 1,126 shares of common stock of Marconi International University, Inc. (i.e., Plaintiff Marconi), which shares represented 100% of Marconi's issued and outstanding capital stock. A true and correct copy of the SPA is attached hereto as Exhibit "A".[1]

16. A primary reason UNIR decided to purchase 100% of Marconi's shares from Ricci is because UNIR believed Marconi possessed all of the required licenses and accreditations for operation in the State of Florida.

---

[1] Because the SPA contains a confidentiality provision, the SPA and other exhibits to the Complaint will be filed separately under seal (with the Court's permission), along with the unredacted version of this Complaint.

**Ricci's False Representations and Warranties as to License Compliance**

17. In Section 2.3 of the SPA, Ricci represented and warranted that, as of the Closing Date, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" listed in the Schedule A attachment to the SPA. *See* Ex. A at § 2.3. She also represented and warranted that, as of the Closing Date, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.*

18. Included in the Licenses listed in the Schedule A attachment to the SPA were the (i) Florida Commission of Independent Education ("FCIE") and (ii) Accrediting Council for Independent Colleges & Schools ("ACICS") licenses.

19. Contrary to Ricci's representation and warranty in Section 2.3 of the SPA, as of the Closing Date, Marconi was engaged in several practices that amounted to a violation of, or nonconformity with, or otherwise threatened the revocation of the ACICS license, including (a) failure to follow ACICS' Foreign Credential Evaluation Protocols ("FCE") with regard to the enrollment of European students in its online courses, (b) improperly offering dual degree programs in conjunction with Università degli Studi "Guglielmo Marconi" when that university did not authorize Marconi authorization to do so, (c) failing to register its students in ACICS' Campus Accountability Report ("CAR"), and (d) improperly offering doctorate degrees without authorization from ACICS.

**Ricci's False Representations and Warranties as to Regulatory Matters**

20. Next, under Section 2.5 of the SPA, Ricci represented and warranted that, as of the Closing Date, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

has ██████████████████████████████████████████████████████████████.” *See* Ex. A at § 2.5

21. Contrary to Ricci's representation and warranty, prior to the Closing Date, ACICS had been closely evaluating and reviewing Marconi's practices as part of ACICS' audit and license renewal procedures. In fact, prior to the Closing Date, Ricci had even received notices for information and to show cause from ACICS.

22. However, Ricci failed to disclose to UNIR the extent of the information that ACICS had requested prior to the Closing Date.

**Ricci's Violations of Her Employment Agreement and Fiduciary Duties to Marconi**

23. On or about June 1, 2019, Ricci entered into an Employment Agreement with Marconi ("Employment Agreement"). A true and correct copy of the Employment Agreement is attached hereto as Exhibit "B".

24. Pursuant to the Employment Agreement, Ricci was employed as Marconi's Chief Executive Officer (CEO) and was to "█████████████████████████████████████

███████████████████████████████████████████████████████████████" *See* Ex. B at § 1.3(a). She was also required to "█████████████████████████████████████

████████████████████████████." *Id.* at § 1.3(b).

25. Under the Employment Agreement, she "███████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████." *Id.* at § 3.1. She "███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████." *Id.*

26. Under the Employment Agreement, she "███████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████████████████████████████." *Id*. at § 3.2.

27. Under the Employment Agreement, the prevailing party in any litigation "████
████████████████████████████████████████████████████████████████████
█████████████████████████████████████." *Id*. at § 5.15.

28. Ricci served as Marconi's President until she resigned from her position and terminated her Employment Agreement on November 21, 2019. Yet despite resigning, Ricci kept her seat on the Marconi Board of Directors, and still holds a seat to this day.

29. In violation of the Employment Agreement and her fiduciary duties to Marconi, Ricci worked with Defendant Bevilacqua and others outside Marconi to operate, work for, or assist a competing online university, Defendant MIA.

**Ricci and MIA Deceive Students Into Enrolling in MIA Rather Than Marconi**

30. Upon information and belief, Ricci and MIA utilized Marconi resources, trade secrets, intellectual property, and other materials to recruit prospective students away from Marconi and to MIA by deceiving the students into believing they were registering in Marconi, when in fact, they were registering with, and paying registration fees to, MIA.

31. For example, on June 26, 2019, just 25 days after Ricci executed the Employment Agreement with Marconi, Ricci registered an Italian student for a Data Protection Officer Training Course with Marconi. The cost of the course was 1800 euros. The registration form included Marconi letterhead and listed Marconi's address in Miami, yet the wire instructions on the form

directed the student to wire the registration funds to an account in the name of "MIA GLOBAL BUSINESS SCHOOL." This account is not in any way related to Marconi.

32. Upon information and belief, the Italian student paid the registration fee and enrolled in the course under the belief that he was enrolling in a course at Marconi.

33. In fact, the Italian student was actually enrolling in a course at MIA.

34. Neither UNIR nor Marconi ever received this student's registration form and payment, nor did Marconi have any records that this student ever enrolled or attended any courses.

35. Upon information and belief, Ricci and MIA recruited this student, and several other students, by deceptively using Marconi's name, trademark, address, and marketing materials for their benefit.

36. Upon information and belief, Ricci and MIA have also been issuing Marconi Certificates of Completion, which bear Marconi's name and trademark, to MIA's students who have completed their course work with MIA.

**Bevilacqua's Violations of His Consultancy Agreement With Marconi**

37. On or about June 1, 2019, Bevilacqua entered into a Consultancy Agreement with Marconi ("Consultancy Agreement"). A true and correct copy of the Consultancy Agreement is attached hereto as Exhibit "C".

38. As CEO of Marconi at the time, Ricci executed the Consultancy Agreement on behalf of Marconi. *See* Ex. C.

39. Pursuant to the Consultancy Agreement, Bevilacqua was engaged as an independent contractor consultant and was to "███████████████████████████████████████████████████████████████" *See* Ex. B at § 1(a). He also warranted and represented to Marconi that he was "███████████████████████████████████████████

██████████████████████████████████████████

██████████" of his responsibilities under the Consultancy Agreement. *Id*. at § 1(d).

40. Bevilacqua further agreed that ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████" *Id*. at § 6(a).

41. Bevilacqua also agreed that "████████████████████████████" of the Consultancy Agreement, Bevilacqua would not "████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████." *Id*. at § 6(b).

42. Bevilacqua terminated the Consultancy Agreement on November 21, 2019, the same day Ricci terminated her Employment Agreement.

43. Nonetheless, Bevilacqua violated the Consultancy Agreement by owning, operating, and/or working for MIA, a business that directly, or indirectly, competes with Marconi, without Marconi's prior written consent. His violations occurred both during the term of the agreement, and within one year of the termination.

44. Bevilacqua also violated the Consultancy Agreement by diverting, or assisting in the diversion of, prospective Marconi students to MIA.

45. Additionally, Bevilacqua violated the Consultancy Agreement by employing Ricci, soliciting Ricci for employment, or recommending Ricci for employment with MIA while she was employed with Marconi.

46.     Upon information and belief, at the time both Ricci and Bevilacua executed the Consultancy Agreement, the pair had already agreed to advance the business interests of MIA to the detriment of Marconi.

47.     Under the Consultancy Agreement, the prevailing party in any litigation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* at § 21.

## CLAIMS FOR RELIEF

### COUNT I - BREACH OF CONTRACT (SPA)
### (Against Ricci)

48.     UNIR re-alleges and incorporates the allegations of paragraphs 1 through 47 as if fully set forth herein.

49.     UNIR and Ricci entered into a valid and binding contract, the SPA.

50.     Ricci breached the SPA by failing to fulfill her obligations under the representations and warranties, and by making false representations and warranties, as outlined above.

51.     Specifically, she represented/warrantied that, as of the Closing Date, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" attached to the SPA in a schedule entitled Schedule A.  In truth, as of the Closing Date, Marconi was engaged in several practices that threatened the revocation of the ACICS license, including (a) failure to follow ACICS' Foreign Credential Evaluation Protocols ("FCE") with regard to the enrollment of European students in its online courses, (b) improperly offering dual degree programs in conjunction with Università degli Studi "Guglielmo Marconi" when that university had not given Marconi authorization to do so, (c) failing to register its students in ACICS' Campus Accountability Report ("CAR"), and (d) improperly offering doctorate degrees without authorization from ACICS.

52. She also represented and warranted that, as of the Closing Date, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

53. In truth, prior to the Closing Date, Ricci had received notices for information and to show cause from ACICS. Prior to the Closing Date, ACICS had been closely evaluating and reviewing Marconi's practices as part of ACICS' audit and license renewal procedures, and Ricci failed to disclose the extent of the information ACICS had requested and share the communications Marconi received from ACICS with UNIR prior to the execution of the SPA.

54. As a result of Ricci's breaches, UNIR has been damaged.

WHEREFORE, Plaintiff UNIR requests judgment against Ricci for compensatory damages, interest as allowed by law, attorney's fees, and costs, as well as any other relief this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT (EMPLOYMENT AGREEMENT)
### (Against Ricci)

55. Marconi re-alleges and incorporates the allegations of paragraphs 1 through 47 as if fully set forth herein.

56. Ricci and Marconi entered into a valid and binding contract, the Employment Agreement.

57. Ricci breached the Employment Agreement by working with Defendant Bevilacqua and others outside Marconi to create and manage a competing online university, Defendant MIA, as well as recruiting students to MIA by deceptively using Marconi's name, trademark, address, and marketing materials in a way that gave students the impression that they were registering for Marconi when, in fact, they were registering for MIA.

58.     As a result of Ricci's breach, Marconi has been damaged.

WHEREFORE, Plaintiff Marconi requests judgment against Ricci for compensatory damages, interest as allowed by law, attorney's fees, and costs, as well as any other relief this Court deems just and proper.

## COUNT III – BREACH OF FIDUCIARY DUTY
### (Against Ricci)

59.     Marconi re-alleges and incorporates the allegations of paragraphs 1 through 47 as if fully set forth herein.

60.     As a result of her role as Marconi's Chief Executive Officer and a member of Marconi's Board of Directors, Ricci had a fiduciary duty to Marconi.

61.     Ricci breached that fiduciary duty by working with Defendant Bevilacqua and others outside Marconi to create and manage a competing online university, Defendant MIA, as well as recruiting students to MIA by deceptively using Marconi's name, trademark, address, and marketing materials in a way that gave students the impression that they were registering for Marconi when, in fact, they were registering for MIA.

WHEREFORE, Plaintiff Marconi requests judgment against Ricci for compensatory damages, interest as allowed by law, attorney's fees, and costs, as well as any other relief this Court deems just and proper.

## COUNT IV – FRAUD
### (Against Ricci)

62.     UNIR re-alleges and incorporates the allegations of paragraphs 1 through 47 as if fully set forth herein.

63.     Ricci knowingly and intentionally made several false material representations of fact to UNIR, including representing that, as of March 21, 2019,

      a. Marconi was not in material violation of, nonconformity with or default under, the ACICS license;

      b. no notice, demand, summons, or similar request for information, or complaint or order regarding any regulatory liabilities had been issued or served on Marconi and no penalty had been assessed, no investigation or review was pending, or was threatened against Marconi; and

64. Upon information and belief, Ricci made the statements in Rome, Italy via a written document transmitted via email to UNIR on or around March 21, 2019.

65. Ricci intentionally made the aforementioned misrepresentations knowing that they were false.

66. In truth, as of March 21, 2019, Marconi was engaged in several practices that threatened the revocation of the ACICS license, including (a) failure to follow ACICS' Foreign Credential Evaluation Protocols ("FCE") with regard to the enrollment of European students in its online courses, (b) improperly offering dual degree programs in conjunction with Università degli Studi "Guglielmo Marconi" when that university had not given Marconi authorization to do so, (c) failing to register its students in ACICS' Campus Accountability Report ("CAR"), and (d) improperly offering doctorate degrees without authorization from ACICS.

67. In truth, as of March 21, 2019, Ricci had received notices for information and to show cause from ACICS. Prior to the Closing Date, ACICS had been closely evaluating and reviewing Marconi's practices as part of ACICS' audit and license renewal procedures, and Ricci failed to disclose the extent of the information ACICS had requested and share the communications Marconi received from ACICS with UNIR prior to the execution of the SPA.

68. Ricci intended that UNIR rely on her misrepresentations to its detriment.

69. UNIR did, in fact, rely on the misrepresentations to its detriment when it entered into the SPA and took control of Marconi.

70. As a result of Ricci's breaches, UNIR has been damaged. UNIR has invested significant sums of money investigating Ricci's misrepresentations, as well as attempting to correct the administrative and regulatory problems she created in order to preserve Marconi's licensing and accreditation. Moreover, the value of the Marconi stock UNIR purchased from Ricci has been significantly diminished since the time the SPA was executed given the reputational damage Ricci's actions have caused Marconi.

WHEREFORE, Plaintiff UNIR requests judgment against Ricci for compensatory damages, interest as allowed by law, attorney's fees, and costs, as well as any other relief this Court deems just and proper.

**COUNT V – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, CHAPTER 501, PART II, FLORIDA STATUTES**
**(Against Ricci and MIA)**

71. Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 47 as if fully set forth herein.

72. Florida Statutes Section 501.204(1) provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Act shall be "construed liberally to promote" the protection of the "consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

73. Defendants Ricci and MIA were, and are, at all material times to the allegations herein, engaged in "trade or commerce" as defined by the Act. § 501.203, Fla. Stat. Specifically,

they operate(d) a for-profit online university, Defendant MIA.

74. Despite her obligations to Marconi, Ricci started MIA while still on the Marconi Board of Directors and while serving as its CEO. Defendant MIA competes in the online educational marketplace with Marconi.

75. Upon information and belief, Ricci and MIA utilized Marconi resources, intellectual property, and other materials to recruit prospective students away from Marconi and to MIA by deceiving the students into believing they were registering in Marconi, when in fact, they were registering with, and paying registration fees to, MIA.

76. For example, on June 26, 2019, just 25 days after Ricci executed the Employment Agreement with Marconi, Ricci – while acting in her capacity as agent for MIA – registered an Italian student for a Data Protection Officer Training Course with Marconi. The cost of the course was 1800 euros. The registration form that Ricci sent to the Italian student included Marconi letterhead and listed Marconi's address in Miami, yet the wire instructions on the form directed the student to wire the registration funds to an account in the name of "MIA GLOBAL BUSINESS SCHOOL." This account is not in any way related to Marconi. Upon information and belief, Ricci sent the registration form bearing the false designation of affiliation with Marconi to the student electronically from Rome, Italy on or about June 26, 2019.

77. Upon information and belief, the Italian student paid the registration fee, as well as the tuition, and enrolled in the course under the belief that he was enrolling in a course at Marconi.

78. In fact, the Italian student was actually enrolling in a course at MIA.

79. Neither UNIR nor Marconi ever received this student's registration form and payment, nor did Marconi have any records that this student ever enrolled or attended any courses.

80. Upon information and belief, Ricci and MIA recruited this student, and several

other students, by deceptively using Marconi's name, trademark, address, and marketing materials for their benefit.  Upon information and belief, they have done this via electronic means from Spain and Italy since the Spring of 2019 until present date in an effort to divert business from Marconi to MIA.

81.     Upon information and belief, Ricci and MIA have also been issuing Marconi Certificates of Completion, which bear Marconi's name and trademark, to MIA's students who have completed their course work with MIA.

82.     Ricci and MIA's conduct is likely to be, and indeed, was injurious to consumers. It is also likely to cause, and indeed did cause, confusion to consumers in the marketplace.

83.     Ricci and MIA's conduct is, and was, deceptive, immoral, unethical, oppressive, unconscionable, and unscrupulous.

84.     As a result of Ricci and MIA's actions, Plaintiffs have been damaged.

WHEREFORE, Plaintiff Marconi requests judgment against Ricci and MIA for actual damages, a declaratory judgment that Ricci's and MIA's actions violate the Florida Deceptive and Unfair Trade Practices Act, entry of a preliminary and permanent injunction prohibiting all such further conduct, interest as allowed by law, attorney's fees, costs, as well as any other relief this Court deems just and proper.

### COUNT VI – COMMON LAW UNFAIR COMPETITION
### (Against Ricci and MIA)

85.     Marconi re-alleges and incorporates the allegations of paragraphs 1 through 47 as if fully set forth herein.

86.     Ricci and MIA are using Marconi's "Marconi International University" trademark and trade name to indicate or identify some or all of the products and services that MIA offers. MIA offers its products and services in the same trade area – that is, education – in which Marconi

has already established its trade name and mark.

87. Marconi used the "Marconi International University" trademark and trade name in the marketplace since 2014, long prior to Ricci and MIA's usage of said trademark and trade name.

88. The "Marconi International University" trademark and trade name are arbitrary and have acquired secondary meaning.

89. Moreover, Ricci and MIA – while acting as Marconi's competitors – have engaged in deceptive and fraudulent conduct.

90. Specifically, upon information and belief, Ricci and MIA have utilized the Marconi trade name and mark to recruit prospective students away from Marconi and to MIA by deceiving the students into believing they were registering in Marconi, when in fact, they were registering with, and paying registration fees to, MIA.

91. For example, on June 26, 2019, just 25 days after Ricci executed the Employment Agreement with Marconi, Ricci – while acting in her capacity as agent for MIA – registered an Italian student for a Data Protection Officer Training Course with Marconi.  The cost of the course was 1800 euros.  The registration form that Ricci sent to the Italian student included Marconi letterhead (with Marconi's trademark) and listed Marconi's address in Miami, yet the wire instructions on the form directed the student to wire the registration funds to an account in the name of "MIA GLOBAL BUSINESS SCHOOL."  This account is not in any way related to Marconi.  Upon information and belief, Ricci sent the registration form bearing the false designation of affiliation with Marconi to the student electronically from Rome, Italy on or about June 26, 2019.

92. Upon information and belief, the Italian student paid the registration fee and enrolled in the course under the belief that he was enrolling in a course at Marconi.

93. In fact, the Italian student was actually enrolling in a course at MIA.

94. Neither UNIR nor Marconi ever received this student's registration form and payment, nor did Marconi have any records that this student ever enrolled or attended any courses.

95. Upon information and belief, Ricci and MIA recruited this student, and several other students, by deceptively using Marconi's trade name and mark for their benefit. Upon information and belief, they have done this via electronic means from Spain and Italy since the Spring of 2019 until present date in an effort to divert business from Marconi to MIA.

96. Upon information and belief, Ricci and MIA have also been issuing Marconi Certificates of Completion, which bear Marconi's trade name and mark, to MIA's students who have completed their course work with MIA.

97. Consumer confusion is likely to result, and indeed has resulted, from Ricci and MIA's use of the Marconi trademark and trade name.

WHEREFORE, Plaintiff Marconi requests judgment against Ricci and MIA for compensatory damages, disgorgement of profits, damages, entry of a preliminary and permanent injunction prohibiting all such further conduct, interest as allowed by law, as well as any other relief this Court deems just and proper.

### COUNT VII – BREACH OF CONTRACT (CONSULTANCY AGREEMENT)
### (Against Bevilacqua)

98. Marconi re-alleges and incorporates the allegations of paragraphs 1 through 47 as if fully set forth herein.

99. Bevilacqua and Marconi entered into a valid and binding contract, the Consultancy Agreement.

100. Bevilacqua breached the Consultancy Agreement by

   a. owning, operating, and/or working for MIA, a business that directly, or

    indirectly, competes with Marconi, without Marconi's prior written consent;

  b. by diverting, or assisting in the diversion of, prospective Marconi students to MIA.

  c. by employing Ricci, soliciting Ricci for employment, or recommending Ricci for employment with MIA while she was employed with Marconi.

101. As a result of Bevilacqua's breaches, Marconi has been damaged.

WHEREFORE, Plaintiff Marconi requests judgment against Bevilacqua for compensatory damages, interest as allowed by law, attorney's fees, and costs, as well as any other relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all issues so triable.

Dated: June 18, 2020.

Respectfully submitted,

**SANCHEZ FISCHER LEVINE, LLP**
1200 Brickell Avenue, Ste. 750
Miami, Florida 33131
Tel.: (305) 925-9947

By: */s/ Fausto Sanchez*
Fausto Sanchez, Esq.
Florida Bar No.: 86229
Email: fsanchez@sfl-law.com
Secondary: eservice@sfl-law.com
Chad S. Purdie, Esq.
Florida Bar No.: 41965
Email: cpurdie@sfl-law.com
David M. Levine, Esq.
Florida Bar No. 84431
Email: dlevine@sfl-law.com

*Counsel for Plaintiffs*